IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALISIA KELLEY and JOHNNIE MAE KELLEY, Co-Administrators of the ESTATE OF BRUCE KELLEY JR., deceased, | ) ) ) ) | Civil Action No. 17-1599 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| **BRIAN O'MALLEY**, both in his Official and Individual Capacities as Sergeant for the Allegheny County Port Authority; and **DOMINIC RIVOTTI**, in both his Official and Individual Capacities as Officer for the Allegheny County Port Authority, | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) ) ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

AND NOW COME Defendants, Brian O'Malley and Dominic Ravotti (collectively, "Defendants"), by their undersigned counsel, and file the within Memorandum In Support Of Motion For Summary Judgment, and in support thereof state as follows.

### I. FACTUAL BACKGROUND

Defendants adopt the facts as set forth in their Statement Of Material Facts Not In Dispute.

### II. PROCEDURAL HISTORY

Defendants filed a Motion To Dismiss Plaintiffs' original Complaint (Docket Entry 10), which this Court granted (Docket Entry 25). The United States Court of Appeals for the Third Circuit vacated this Court's dismissal of the Complaint limited only to the excessive force claim against Defendants. The Court of Appeals affirmed the dismissal of all other claims and

allegations.  The excessive force claim against Defendants was remanded (Docket Entries 28 and 29).[1]

The parties have engaged in extensive discovery, including twenty-four depositions and the exchange and production of documents, records and videotape.  Defendants now seek summary judgment on the excessive force claim.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

This Court has explained the standard of review for summary judgment as follows:

> A court is to grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). Summary judgment must be granted 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). 'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). But, '[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be

---

[1] In its remand decision, the Court of Appeals relied solely on the averments in the Complaint, which under the applicable standard of review were required to be accepted as true, and highlighted the following in support of its decision:

- At the time of the shooting, Bruce Kelley, Jr. posed little immediate threat to the safety of police officers or anyone else.
- Though Kelley, Jr. was in possession of a knife and refused to put it down, there were no allegations that he raised the knife, pointed it towards any officer or other person, or threated anyone with it.
- At the time of the shooting, Kelley, Jr. was incapable of fleeing from the police or escaping ultimate capture because he was cornered.
- There were factual questions about why the police did not attempt to use alternative, less lethal means of force before gun fire erupted.
- A sizeable force of Port Authority police officers had effectively surrounded Kelley, Jr. in front of a house prior to shooting him.
- There were no allegations that Kelley, Jr. moved in a threatening manner towards the officers or anyone else.

Through discovery, said averments have now been proven to be false (See Defendants' Statement Of Material Facts Not In Dispute).

insufficient; there must be evidence on which the jury could reasonably find for the [*non-movant*].' *Anderson*, 477 U.S. at 252.

The moving party bears the initial burden of demonstrating that there are no genuine disputes of material fact. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d. 1358, 1362 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323). If the moving party satisfies this burden, the opposing party must designate specific facts in the record that show that there is a genuine factual dispute to be resolved at trial. *Celotex*, 477 U.S. at 324. The non-moving party may rely on its own affidavits or on the 'depositions, answers to interrogatories, and admissions on file' to designate these facts, but may not rely solely on its own pleadings. *Id.*; see also *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). 'A fact is "material" if, under the substantive law of the case, it is outcome determinative.' *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48).

There are several factual disputes in this case, and the Court may not and therefore will not make findings as to those disputes. But, 'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' *Anderson*, 477 U.S. at 247-48 (emphasis in original). All facts and reasonable inferences will be viewed in the light most favorable to the Plaintiff, the party opposing summary judgment. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). So, where the facts are in dispute, the Plaintiff's version of the events at question will be adopted. *Id.*; see also, e.g., *Martin for Estate of Webb v. City of Newark*, _____ F. App'x _____, 2018 WL 6828424, at *3 (3d Cir. Dec 28, 2018).

Knight v. Bobanic, No. 2:15-cv-00820, 2019 WL 2151293 at *4 (W.D.Pa. May 17, 2019).

The Court of Appeals for the Third Circuit has considered whether the legal standard is any different in a deadly force case, such as here, where the decedent is unable to testify and offer his version of events. On this issue, the Court held:

Under Federal Rule of Civil Procedure 56, summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Facts that could affect the outcome are "material facts," and a dispute about a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-

3

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986).

Because 'the victim of deadly force is unable to testify,' *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999), we have recognized that a court ruling on summary judgment in a deadly-force case 'should be cautious…to 'ensure that the officer[s are] not taking advantage of the fact that the witness most likely to contradict [their] story – the person shot dead – is unable to testify,' ' *id.*(quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th. Cir. 1994)). Thus, a court should avoid simply accepting ' 'what may be a selfserving account by the officer[s]. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer[s'] story, and consider whether this evidence could convince a rational fact finder that the officer[s] acted unreasonably.' ' *Id.* (quoting *Scott*, 39 F.3d at 915).

This is not to say that the summary judgment standard should be applied with extra rigor in deadly-force cases. Rule 56 contains no separate provision governing summary judgment in such cases. *Cf. Wallace v. SMC Pneumatics, Inc.* 103 F.3d 1394, 1396 (7th. Cir. 1997). Just as in a run-of-the-mill civil action, the party opposing summary judgment in a deadly-force case must point to evidence – whether direct or circumstantial – that creates a genuine issue of material fact, 'and may not rely simply on the assertion that a reasonable jury could discredit the opponent[s'] account.' *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003); *see Thompson v. Hubbard*, 257 F.3d 896, 899-900 (8th. Cir. 2001); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th. Cir. 1996); *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). Our conclusion on this score is reinforced by decisions refusing to ratchet up the summary judgment standard for other types of cases. *See Anderson*, 477 U.S. at 256-57, 106 S.Ct. 2505 (defamation cases requiring a showing of malice); *Wallace*, 103 F.3d 1396 (employment-discrimination cases); *Texaco P.R., Inc. v. Medina*, 834 F.2d 242, 247 (1st Cir. 1987) (antitrust cases); see also *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 896 (7th. Cir. 2001) (Easterbrook, J., dissenting) ('[Rule 56 prescribes] a universally applicable standard; there is no room for a thumb on the scale against summary judgment in any class of cases').

<u>Lamont v. State of New Jersey, et. al.</u>, 637 F.3d 177, 181-82 (3d Cir. 2011).

# IV. ARGUMENT

Defendants submit that the facts in the record, even viewed in the light most favorable to the Plaintiffs, conclusively demonstrate that Defendants' use of force was not unreasonable and, therefore, no Fourth Amendment violation occurred.  In the alternative, Defendants submit that it was not clearly established as of the date of the incident that their conduct would violate Bruce Kelley, Jr.'s constitutional rights under the facts they encountered.  Consequently, Defendants submit that they are entitled to qualified immunity on this basis.

When deciding these two issues, the United States Supreme Court held in Saucier v. Katz, 533 U.S. 194 (2001), that courts must first determine whether a constitutional right was violated. Only after that issue was resolved could a court decide whether the constitutional right at issue was clearly established at the time of the subject incident.

Since Saucier, however, the Supreme Court has changed the analytical framework.  In Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009), the Court explained that "Saucier's procedure should not be regarded as an inflexible requirement." 555 U.S. at 227, 129 S.Ct. 808. The Court stated that the Saucier procedure is often beneficial because it "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases of which a qualified immunity defense is unavailable." 555 U.S. at 236, 129 S.Ct. 808.  That said, the Court concluded that courts now have discretion to decide the two issues in either order.

Whether Defendants used excessive force against Kelley, Jr. must be analyzed under the Fourth Amendment's objective reasonableness standard.  There is no question that Kelley, Jr. was seized when Defendants shot and killed him.  The issue is whether Defendants' use of force was objectively reasonable under the circumstances.  Once the material facts have been determined,

and all inferences are drawn in favor of the non-moving party, the reasonableness of the police

officers' actions is a pure question of law.  Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1789, (2007).

The United States Court of Appeals for the Third Circuit has discussed the legal standard

in this analysis as follows:

> Before proceeding, it is necessary to clarify our Fourth Amendment standard in deadly-force cases. Following the Supreme Court's lead in *Tennessee v. Garner*, we have previously suggested that an officer's use of deadly force is justified under the Fourth Amendment only when (1) the officer has reason to believe that the suspect poses a 'significant threat of death or serious physical injury to the officer or others.' and (2) deadly force is necessary to prevent the suspect's escape or serious injury to others. In *Scott v. Harris*, however, the Supreme Court clarified that '*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute deadly force'' Rather, *Garner* was 'simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation.' Scott abrogates our use of special standards in deadly-force cases and reinstates 'reasonableness' as the ultimate – and only – inquiry. 'Whether or not [an officer's] actions constituted application of 'deadly force,' all that matters is whether [the officer's] actions were reasonable.' This is not to say that the considerations enumerated in *Garner* are irrelevant to the reasonableness analysis; to the contrary, in many cases, including this one, a proper assessment of the threat of injury or the risk of flight is crucial to identifying the magnitude of the governmental interest at stake. But such considerations are simply the means by which we approach the ultimate inquiry, not constitutional requirements in their own right.
>
> The reasonableness of a seizure is assessed in light of the totality of the circumstances. We analyze this question 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' making 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Johnson v. City of Philadelphia, et. al., 837 F.3d 343, 349-50 (3d Cir. 2016).

Here, the facts clearly demonstrate that Defendants justifiably used deadly force.  At the

outset of the incident, Kelly, Jr. assaulted Port Authority Police Officers Thomas Adams and Emily

Hampy.[2]  Subsequently and on multiple occasions, Kelly, Jr. swung his knife and pointed it in the direction of the officers who were attempting to arrest him.[3]  Indeed, at one point, when Port Authority Police Officer Kyhnroe Sanders attempted to use his baton to strike the arm/hand of Kelly, Jr. in the hope of knocking the knife to the ground, Kelly, Jr. turned around, apparently sensing Officer Sanders' approach, and swung the knife directly at Office Sanders.  Fortunately, Officer Sanders jumped back, dodging Kelly, Jr.'s assault.[4]

The police officers pursuing Kelly, Jr. demonstrated great restraint in not deploying deadly force prior to the time Defendants discharged their weapons.  The officers, including Defendants, gave countless verbal commands to Kelly, Jr. to stop, to drop the knife, to get on the ground, etc.[5] Kelly, Jr. heard and understood said commands; however, he frequently responded to the same by turning towards the officers pursuing him and shouting profanity, and he always refused to cooperate.[6]  The pursuing officers used multiple deployments of less than lethal force, including numerous deployments of OC (pepper spray), numerous deployments of Tasers, deployment of an ASP baton, and finally the deployment of K-9 Aren.[7]  All available methods of non-lethal force had been attempted and exhausted.

It was not until those non-lethal methods of force were exhausted without success ***and*** Kelly, Jr. moved directly towards O'Malley, who was a mere eight (8) feet away, with his knife – bloody after the violent assault on K-9 Aren – extended that deadly force was used and necessary

---

[2] Statement Of Material Facts Not In Dispute at ¶¶ 12, 16, 17.
[3] Statement Of Material Facts Not In Dispute at ¶¶ 18, 39, 41, 42, 63, 75, 82, 83, 89, 94.
[4] Statement Of Material Facts Not In Dispute at ¶¶ 40, 41, 42, 82, 83, Appendix at Q and R.
[5] Statement Of Material Facts Not In Dispute at ¶¶ 11, 21, 25, 37, 38, 39, 43, 60, 77, 80, 85, 90, 92.
[6] Statement Of Material Facts Not In Dispute at ¶¶ 25, 37, 38, 39, 80, 90, 92.
[7] Statement Of Material Facts Not In Dispute at ¶¶ 15, 26, 36, 40, 42, 43, 47, Appendix at Q and R.

to protect O'Malley from serious bodily injury or death.[8]  Kelly, Jr. had demonstrated his willingness to resort to violence by brutally stabbing K-9 Aren, and O'Malley feared for his life.[9] He discharged his weapon to save himself and others from Kelly, Jr.[10]  Likewise, Ravotti feared for O'Malley's life and fired his weapon to save O'Malley and others.[11]  No reasonable juror could conclude that just before Defendants opened fire there was not a serious risk that Kelly, Jr. would stab O'Malley, and no reasonable juror could conclude that it was unreasonable for Defendants to deploy deadly force in response to the threat Kelly, Jr. posed.  Not only were Defendants justified in using lethal force when they discharged their weapons, but a review of the totality of the circumstances leading up to the shooting justifies the use of deadly force.

All of the foregoing facts, viewed in the light most favorable to Plaintiffs, do not demonstrate that Defendants violated Kelly, Jr.'s Fourth Amendment constitutional rights. Because Plaintiffs have failed to establish a constitutional violation, Defendants are entitled to qualified immunity.  Summary judgment should be entered in their favor.

In the alternative, if this Court were to determine that evidence of a constitutional violation has been adduced, which Defendants dispute, then the Court must consider the second step of the analysis to determine whether the constitutional right was clearly established.[12]  In other words, under the facts of this case, would a reasonable officer have understood that his actions were prohibited under the law.  The analysis of this issue is purely legal.  If it would not have been clear to a reasonable officer what the law required under the facts, the officer is entitled to qualified immunity.  In situations where the defense of qualified immunity is upheld, an officer would not

---

[8] Statement Of Material Facts Not In Dispute at ¶¶ 50, 98, 100, 102, 104, 153, 154, 155.
[9] Statement Of Material Facts Not In Dispute at ¶¶ 48, 66, 67, 97, 98, 102, 160, 162.
[10] Statement Of Material Facts Not In Dispute at ¶¶ 160, 162.
[11] Statement Of Material Facts Not In Dispute at ¶¶ 104, 109, 114.
[12] As noted above, this Court has the discretion to decide this issue first if it chooses.

be found liable, even if his conduct, such as the use of deadly force, actually could be said to have violated Kelley, Jr.'s Fourth Amendment rights, so long as an objectively reasonable officer could have believed, under the circumstances, that the conduct was lawful.

The United States Supreme Court's decision in Brosseau v. Haugen, 543 U.S. 194 (2004), illustrates the application of this principle in the use of deadly force context.  There, the Court held that an officer who shot a fleeing felon motorist in the back was entitled to qualified immunity because prior caselaw did not clearly establish that the officer's conduct violated the decedent's Fourth Amendment rights.  According to the Court, qualified immunity shields an officer from suit when the officer makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances the officer confronted.  If the law at the time did not clearly establish that the officer's conduct would violate the constitution, the officer should not be subject to liability or, indeed, even the burden of litigation.

The qualified immunity analysis was recently addressed by the United States Court of Appeals for the Third Circuit as follows:

> Qualified immunity's second prong 'shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'' *Mullenix v. Luna*, ____U.S.___, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson*, 555 U.S. at 231, 129 S.Ct. 808).
>
> 'Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.' *District of Columbia v. Wesby*, ____U.S.___, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018) (internal quotation marks and citation omitted). The inquiry is an 'objective (albeit fact-specific) question,' under which '[an officer]'s subjective beliefs…are irrelevant.' *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Because the inquiry is from the perspective of a reasonable officer, we 'consider [] only the facts that were knowable to the

defendant officer [].' *White v. Pauly*, U.S.___, 137 S.Ct. 548, 550, 196 L.Ed.2d 463 (2017) (citation omitted).

In rare cases, a plaintiff may show that a right is clearly established if the 'violation [is] 'obvious.' ' *See Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In the excessive-force context "obvious cases" are those that obviously violate *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *See Brosseau*, 543 U.S. at 199, 125 S.Ct. 596. '[*Graham*] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.' *Id.* at 198, 125 S.Ct. 596 (citation omitted). And *Garner* held that '[deadly] force may not be used unless it is necessary to prevent ... escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.' 471 U.S. at 3, 105 S.Ct. 1694.

But in most cases, a plaintiff must show that a right is clearly established because 'the violative nature of *particular* conduct [was] clearly established.' *Ziglar v. Abbasi*, ––– U.S. ––––, 137 S. Ct. 1843, 1866, 198 L.Ed.2d 290 (2017) (quoting *Mullenix*, 136 S. Ct. at 308). In other words, "settled law," *Wesby*, 138 S. Ct. at 590, must ' 'squarely govern[ ]' the specific facts at issue,' *see Kisela v. Hughes*, ––– U.S. ––––, 138 S. Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (quoting *Mullenix*, 136 S. Ct. at 309). The Supreme Court has explained that a plaintiff may satisfy this standard by 'identify[ing] a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [constitutional provision at issue].' *White*, 137 S. Ct. at 552.

For qualified-immunity purposes, 'clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'' *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted); *see Wesby*, 138 S. Ct. at 589–90 ('To be clearly established, a legal principle must ... [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]' (citations and internal quotation marks omitted)). So we first look to factually analogous precedents of the Supreme Court and the Third Circuit. *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247–48 (3d Cir. 2016). Then, we examine persuasive authorities, such as our nonprecedential opinions and decisions from other Courts of Appeals. *See id.* We may consider all relevant cases

under this inquiry, not just those cited by the parties. *See Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).

James et. al. v. New Jersey State Police et. al., 957 F.3d 165, 169-70, (3d Cir. 2020).

The Supreme Court has also stated:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct ' 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' ' *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' *Reichle v. Howards*, 566 U.S. ___, _____, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). 'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' *Ashcroft .v al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
>
> 'We have repeatedly told courts…not to define clearly established law at a high level of generality.' *al-Kidd, supra*, at 742, 131 S.Ct. 2074. The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' *Ibid*. (emphasis added). This inquiry ' 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'' *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.' 533 U.S., at 205, 121 S.Ct. 2151.

Mullenix v. Luna, 577 U.S. 7, 11-12 (2015).

Our Court of Appeals has additionally stated:

> The Supreme Court stressed that the qualified immunity question must be resolved 'at the earliest possible stage in the litigation.' *Id.*

> at 2156 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534,
> 116 L.Ed.2d 589 (1991) (per curiam)). 'Qualified immunity is 'an
> entitlement not to stand trial or face the other burdens of litigation.''
> *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. 2806
> (1985)). 'The privilege is 'an immunity from suit rather than a mere
> defense to liability, and like an absolute immunity, it is effectively
> lost if a case is erroneously permitted to go to trial.'' *Id.*

Bennett v. Murphy et al., 274 F.3d 133 136 (3d Cir. 2002).  Indeed, the Court recently reminded

the District Courts that "[q]ualified immunity, after all, protects even those officials who exercise

extraordinarily poor judgment." Savers v. Borough of Nesquehoning, 905 F.3d 711, 719 (3d Cir.

2018) (citing al-Kidd, 563 U.S. at 743).

It should be no surprise that officers who are being directly threatened by an armed suspect

may use deadly force in defense of themselves, fellow officers, and members of the public.  See,

for example, the cases of Hayek v. City of St. Paul, 488 F.3d 1049 (8th Cir. 2007), in which police

officers were found to have acted properly in shooting and killing an allegedly emotionally

disturbed 19-year-old, 300-pound man who was attacking an officer with a sword; Hassan v. City

of Minneapolis, 489 F.3d 914 (8th Cir. 2007), where officers were held to have acted reasonably

in shooting and killing a man who approached them in a threatening manner while brandishing a

machete and tire iron; and Livermore v. Lubelan, 476 F.3d 397 (6th Cir. 2007), which held that an

officer acted reasonably in shooting and killing a suspect who was armed and whom he believed

was pointing his gun at another officer.

The defense of qualified immunity is granted or withheld not on the basis of hindsight, but

on the basis of what the police officers reasonably believed at the time of the shooting, given what

they knew and perceived at that time.  The fact that the officers may be mistaken in considering a

particular individual to be a threat to themselves or others will not bar qualified immunity as a

defense, provided that the mistake is reasonable under the circumstances.  An example of this

principle is the decision of <u>Blanford v. Sacramento County</u>, 406 F.3d 1110 (9th. Cir. 2005), where the officers who shot a schizophrenic man carrying a sword, rendering him paraplegic, after he appeared to be ignoring their orders to drop the blade and attempted to enter a house, were entitled to qualified immunity.  They did not then know that he could not hear their orders or that he was attempting to enter his own home.

In <u>Lamont v. State of New Jersey, et al.</u>, the United States Court of Appeals for the Third Circuit stated:

> It is unreasonable for an officer to use deadly force against a suspect unless the officer has good reason 'to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.' *Garner,* 471 U.S. at 3, 105 S.Ct. 1694, 85 L.Ed.2d 1. In determining whether this standard was violated, we must remember that law enforcement officers 'are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.' *Graham,* 490 U.S. at 397, 109 S.Ct. 1865, 104 L.Ed.2d 443. Thus, '[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene'; Monday morning quarterbacking is not allowed. *Id.* at 396, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443; *see also Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961 (1921) (Holmes, J.) ('Detached reflection cannot be demanded in the presence of an uplifted knife.'). Under this "standard of reasonableness at the moment," *Graham,* 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443, an officer who uses deadly force in the mistaken belief that a suspect is armed will be forgiven so long as the mistake is reasonable and the circumstances otherwise justify the use of such force. *See id.* at 396, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443; *Saucier [v. Katz],* 533 U.S. [194,] 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 [ (2001) ]; *Curley v. Klem,* 298 F.3d 271, 280 (3d Cir.2002).

637 F.3d 177, 181-82 (3d Cir. 2011).

Applying the above, the <u>Lamont</u> Court then held that police acted reasonably when they responded to a report that a car thief had fled into a dark, wooded area adjacent to the highway; the police came upon the suspect and ordered him to show his hands and surrender, but the suspect

refused and then suddenly pulled his right hand out of his waistband as if he were drawing a gun (which he was not); and the police shot and killed the suspect.

Consider also: <u>Manigault v. King</u>, 339 F. App'x 229 (3d. Cir. 2009), where police pursued the suspect into a heavily wooded area in darkness and the suspect charged them from a distance of 15 feet with a knife in his hand, and it was held the officers use of deadly force was not unreasonable. In <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235 (3d. Cir. 2004), the Court held the officer acted reasonably when he fatally shot a man who escaped from police following repeated incidents of violating a PFA and unlawfully entering the home of his spouse, and when the suspect was located he ran at the officer in a dark alley at full speed, even though he was unarmed. In <u>Williams v. City of Scranton</u>, 566 Fed. Appx 129 (3d. Cir. 2014), the Court ruled that the officer's use of deadly force in shooting the suspect was objectively reasonable where the suspect was quickly moving towards one officer with a large knife, ignored repeated warnings to drop the knife and stop, and was no more than five feet away from the officer at the time she was shot. The Court held that no reasonable juror could find that the use of deadly force violated the suspect's Fourth Amendment rights. Under the circumstances, the officer had probable cause to believe that the suspect posed a significant threat of serious bodily injury or death. It was objectively reasonable for the officer to believe that using deadly force was necessary.

Defendants suggest that in order for them to not be entitled to qualified immunity, they must have been on notice that it was a violation of the Fourth Amendment to use deadly force when they were faced with an individual armed with a knife, who was resisting arrest and attempting to evade arrest by flight, who had just violently stabbed a police K-9 (a non-lethal method of seizing a suspect) multiple times, who had been tasered and sprayed with OC (pepper spray) (additional non-lethal methods of seizing a suspect) to no avail, and was moving with a

knife lifted directly at one of the officers only 8 feet away.  Defendants were in a life-threatening situation and had to make a split-second decision about the use of deadly force in order to protect the lives of Defendant Officer O'Malley and others.  This is far from an obvious case in which any competent officer would have known that shooting Kelley, Jr. to protect O'Malley and others would violate the Fourth Amendment.  Defendants submit that there is no specific decision or determination by the Supreme Court or our Court of Appeals, nor a robust consensus of persuasive legal authority, that clearly established as of January 31, 2016, that all reasonable officers would have known that the conduct exhibited by Defendants in this case was unconstitutional.  The Supreme Court has made it clear that very closely analogous facts are necessary to establish the required notice to officers, but no such case exists.  Rather, the caselaw with basic similarities supports the use of deadly force by Defendants.

## V. CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment.

Respectfully submitted,

Evashavik Law, LLC

*/s/ Gregory A. Evashavik*
Gregory A. Evashavik, Esq.

*/s/ Nicholas J. Evashavik*
Nicholas J. Evashavik, Esq.
(*Attorneys for Defendants*)

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that a true and correct copy of the within *Defendants' Brief in Support of Motion for Summary Judgment* has been served upon the following parties via electronic service:

Noah Geary, Esquire
*(Counsel for Plaintiffs)*

<u>/s/ Gregory A. Evashavik</u>
Gregory A. Evashavik, Esq.

<u>/s/ Nicholas J. Evashavik</u>
Nicholas J. Evashavik, Esq