IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CALISIA KELLEY; and JOHNNIE MAE KELLEY, Co-Administrators of the ESTATE OF BRUCE KELLEY JR., deceased,<br><br>Plaintiffs,<br><br>v.<br><br>**BRIAN O'MALLEY**, both in his Official and Individual Capacities as Sergeant for the Allegheny County Port Authority; and **DOMINIC RIVOTTI**, in both his Official and Individual Capacities as Officer for the Allegheny County Port Authority,<br><br>Defendants, | Civil Action No. 17-1599<br><br><br><br>**JURY TRIAL DEMANDED** |

### DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION

AND NOW, come Defendants, by and through their undersigned counsel, and file the following Reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Summary Judgment Motion stating as follows:

### I. LEGAL ISSUES

Among other things, Plaintiffs make three erroneous legal arguments in opposition to summary judgment. First, Plaintiffs argue that the state of mind/intent of Defendants is an issue that must go to the jury, thereby precluding this Court's consideration of a summary judgment motion. Plaintiffs do not cite to any Fourth Amendment use of deadly force cases in support of their argument. Rather, Plaintiffs cite to cases that involve a cause of action which includes an

element of intent. Security and Data Technologies, Inc. v. School District of Philadelphia, 145 F.Supp.3d 454 (E. D. Pa. 2015), involves a claim by a potential contractor who sued a school district claiming it was denied a contract based on race; the cause of action forming the basis of the claim includes an intent to discriminate on the basis of race. Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144 (3d Cir. 1993), involves a claim by a beneficiary against an insurer seeking benefits under a life insurance policy alleging fraudulent misrepresentations, which includes the element of intent as required proof of the cause of action. As stated by United States Court of Appeals for the Third Circuit in a case cited by Plaintiffs in their brief:

> An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are often tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865. The inquiry turns on "objective reasonableness," meaning that the standard is whether the police officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances" facing the officer, **regardless of the officer's intent or motivation**.

Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) *(emphasis added)*.

Second, Plaintiffs argue that the credibility of Defendants is an issue that must go to the jury, which they wrongly contend precludes this Court considering a summary judgment motion. Plaintiffs cite no case law for this proposition in their Memorandum of Law. Absent any genuine dispute of material fact, concerns regarding credibility of witnesses cannot defeat summary judgment. Schoonejongen, et al. v. Curtiss-Wright Corp., 143 F.3d 120 (3d Cir. 1998).

Third, Plaintiffs argue that the reasonableness/unreasonableness of a use of force is generally for a jury to determine at trial. Plaintiffs recognize, however, that this issue does not preclude this Court from considering a summary judgment motion. The case law cited by Plaintiffs

in their Memorandum of Law demonstrates when this issue is a jury question. The cases cited by Plaintiffs supporting this argument all include facts in the record, such as witness testimony and videotape evidence, that directly contradict the police officer's version of the events. Those cases involve genuine disputes of material fact, contrary to the case at bar.

## II. FACTUAL ISSUES

> [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)

> The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Id.* at 252

Defendants submit that no genuine disputes of material fact exist in the record and now address purported factual disputes advanced by Plaintiffs.[1] First, Plaintiffs argue that the Defendants' inability to mark the specific location of themselves and Kelley, Jr. at the time of the shooting on a Google Earth aerial photograph creates a genuine dispute of material fact. It does not. A simple observation of the subject exhibit used by Plaintiffs' counsel during the depositions of Defendants clearly supports the Defendants' deposition responses and explanations for their inability to mark their locations. The image relied upon by Plaintiffs' counsel is from a great distance; is of poor quality; does not provide a clear view of the area of the shooting, which is obstructed by trees; and does not identify which house is 710 Whitney Avenue. One can only speculate why Plaintiffs' counsel limited his interrogation on this issue to the use of this aerial

---

[1] Any factual dispute averred by Plaintiffs not addressed herein is not conceded. Rather, Defendants rely on their prior filings regarding summary judgment, which are incorporated herein.

3

photograph when he had available to him a multitude of actual scene photographs taken by the Allegheny County Police on the day of the incident that clearly show the area of the occurrence in color and up close.[2] Defendants answered in detail under intensive and lengthy examination by Plaintiffs' counsel at their depositions about the locations of the parties and provided distance testimony.[3]

Second, Plaintiffs included as part of their Appendix an affidavit of Michael Paluselli, dated June 3, 2021, which states only that he conducted a measurement from the bottom of the first step at the front of the entrance of 710 Whitney Avenue to the edge of the opposite side of the sidewalk on the other side of Whitney Avenue. This distance includes the entire yard in front of 710 Whitney Avenue, the sidewalk adjacent to the yard in front of 710 Whitney Avenue, the section of grass in between the sidewalk and the edge of Whitney Avenue, the entire width of and across Whitney Avenue, the section of grass in between the edge of Whitney Avenue on the opposite side of the street, and the sidewalk on the opposite side of Whitney Avenue. This distance measured 58 feet. That distance measurement has no relevance to the record facts in this case. Plaintiffs somehow rely on this measurement to argue those two points, measured to be 58 feet apart, represent the location where Defendant O'Malley was standing when he deployed lethal force compared to where Kelley, Jr. was standing at that time. Plaintiffs fail to cite to anything in the record to support these locations. This measurement is probative of nothing. There is zero evidence in the record to support Plaintiffs' contention that these are the positions of Defendant O'Malley and Kelley, Jr. at the time of the shooting. The affidavit of Michael Paluselli does not create a genuine dispute of material fact.

---

[2] Defendants' Third Supplemental Disclosures which includes CD of photographs and reports from the Allegheny County Medical Examiner's Office.
[3] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 93, 94, 95, 96, 98, 99, 100, 102, 104, 136, 137, 138, 140, 141, 143, 144, 145, 146, 147, 149, 151, 153, 155, 158.

O'Malley testified that Kelley, Jr., after stabbing K-9 Aren repeatedly in the throat, moved directly towards him with uplifted knife from a distance of 8 feet when O'Malley for the first time unholstered his weapon and deployed lethal force to protect himself.[4] Defendant Ravotti testified similarly that Kelley, Jr., after stabbing K-9 Aren repeatedly in the throat, moved directly towards Defendant O'Malley with knife in hand, at which time he deployed lethal force to protect O'Malley.[5]

Third, Plaintiffs argue that the autopsy report indicating two entry wounds in the back of Kelley, Jr. shows the unlawful use of deadly force. Plaintiffs cite no case law for this proposition. In fact, the record evidence demonstrates how this occurred based on the sequence of events. O'Malley and Ravotti were not side by side when they discharged their weapons. Rather, they faced Kelley, Jr. from different angles. Ravotti was following Kelley, Jr. from behind along Whitney Avenue.[6] Defendant O'Malley approached Kelley, Jr. from the opposite side of the street as he stepped onto Whitney Avenue when he deployed K-9 Aren for an apprehension.[7] Ravotti testified that as he faced Kelley, Jr., Defendant O'Malley was to his right.[8] Although Ravotti could not state precisely how far O'Malley was from him, he explained that O'Malley was in his peripheral vision but his focus was on Kelley, Jr. with knife in hand while violently stabbing K-9 Aren.[9] Both Defendants explained in detail that the apprehension by K-9 Aren caused Kelley, Jr. to spin around while violently stabbing K-9 Aren after which Kelley, Jr. moved directly towards

---

[4] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶.149, 150, 151, 152, 153, 154, 155, 162.
[5] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 97, 98, 99, 102, 104.
[6] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 93, 94, 95.
[7] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 44, 45, 46, 135, 136, 137, 140, 141, 143, 144, 146.
[8] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 93, 96, 99.
[9] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 93, 94, 98.

Defendant O'Malley.[10] Based on the record evidence, O'Malley was likely at a 45-degree angle from Ravotti when they discharged their weapons. With Kelley, Jr. approaching directly towards Defendant O'Malley, Defendant Ravotti was looking at the right side and back area of the body of Kelley, Jr..[11] The locations of the entry wounds indicated in the autopsy report are completely consistent with these positions of Defendants and Kelley, Jr., which is uncontradicted in the record.

Fourth, Plaintiffs argue that if no warning was given by the Defendants prior to the deployment of lethal force, then Defendants used unlawful force. Plaintiffs cite no case law to support this proposition. In fact, the record demonstrates that countless warnings had been given by a multitude of police officers on the scene prior to the shooting.

Fifth, Plaintiffs argue that K-9 Aren bit the wrong arm. This is irrelevant. There is also no record evidence to support Plaintiffs' contention. As explained by Defendant O'Malley during his deposition, K-9s are trained to make an apprehension, a/k/a bite, in the arm/shoulder area in all apprehensions.[12]

Sixth, Plaintiffs argue at various times in their Memorandum of Law that Kelley, Jr. was cornered and surrounded by 20 police officers at the time of the shooting and that this evidence creates a genuine dispute of material fact. The record does not support this contention. Plaintiffs cite only to the deposition testimony of Andrew Kaupinis and no other evidence. A review of the testimony by Kaupinis cited by Plaintiffs includes nothing more than a statement about the location of the pursuing officers being on the front side of the house on Whitney Avenue as opposed to behind the house on Whitney Avenue; Kaupinis testified that all of the officers were following

---

[10] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 50, 95, 96, 97, 98, 102, 147, 149, 150, 151, 153, 155.
[11] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 96, 98, 99, 100.
[12] Plaintiffs' Appendix (Docket No. 122) pp. 72, 73, 80, 81, 82, 83, 84, 85.

6

Kelley, Jr. from behind.[13] Plaintiffs' Memorandum of Law directly contradicts their own argument when they repeatedly assert that no police officers, independent of O'Malley and Ravotti, were in close proximity to Kelley, Jr., and therefore in no danger of serious bodily injury or death, at the time lethal force was deployed. Logically, the Defendants would not discharge their weapons at Kelley, Jr. if other officers were opposite them having surrounded Kelley, Jr..

Every officer who testified in this case at deposition confirmed that all of the officers were following Kelley, Jr. from behind with the exception of Defendant O'Malley, who approached from across the street during the deployment of K-9 Aren. Every officer who testified on the issue confirmed that Kelley, Jr. had an open path in front of him to continue his escape.[14]

Seventh, Plaintiffs argue that Kelley, Jr. posed no threat to the safety of anyone and certainly not to the police officers on the scene. The uncontradicted record evidence demonstrates just the opposite. Among other things, Kelley, Jr. spun around and swung his knife in a slashing motion directly at Officer Sanders when Sanders attempted to deploy his ASP/baton;[15] Kelley, Jr. repeatedly raised his knife in the direction of the officers in a threatening manner during the pursuit;[16] and Kelley, Jr. demonstrated his willingness to resort to violence by repeatedly stabbing K-9 Aren in the throat with his knife.[17]

Eighth, Plaintiffs argue that the attempts of non-lethal force including deployment of OC spray and Tasers were not competent. The record does not support this contention. This is irrelevant. In addition, the record unequivocally demonstrates the multitude of attempts by the pursuing officers to use methods of non-lethal force during the pursuit including verbal commands,

---

[13] Defendants' Appendix (Docket No. 120-1) pp.286, 305, 306.
[14] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 44, 45, 62, 93, 96, 111, 112, 137, 138, 145, 158.
[15] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 40, 41, 42, 82, 83.
[16] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 18, 19, 39, 63, 75, 89, 92, 138.
[17] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 48, 49, 97, 98, 149, 150, 151, 153.

deployment of OC spray, deployment of Tasers and the deployment of an ASP/baton.[18] The record demonstrates unequivocally that the pursuing police officers exhausted all means of non-lethal force available in their attempt to gain compliance of Kelley, Jr.

Ninth, Plaintiffs argue that Kelley, Jr. exhibited signs of mental illness throughout the encounter and yet none of the officers attempted to deescalate the situation. This is irrelevant and not supported by the record. When questioned by Plaintiffs' counsel during their depositions, not a single officer testified that he or she believed Kelley, Jr. was mentally ill based on the encounter. The pursuing officers repeatedly attempted to deescalate the situation by giving countless verbal commands to Kelley, Jr. to comply, which he refused and ignored.

Tenth, Plaintiffs argue that facts plead in their Complaint create a genuine dispute of material fact. A party opposing summary judgment may not rely upon mere allegations of their pleadings. Anderson, 477 U.S. at 256.

Finally, Plaintiffs argue that the K-9 officers O'Malley and Ravotti fired their guns in retaliation for the wounding of their partner, the dog. In fact, the record shows that Ravotti was not, and never has been, a K-9 officer.[19] Furthermore, there is no evidence in the record to support this contention. Such a contention is nothing more than argument by counsel, which cannot be considered by this Court in deciding a motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons and those set forth in Defendants' prior filings regarding summary judgment, which are incorporated herein, Defendants are entitled to summary judgment.

---

[18] Defendants' Statement of Material Facts not in Dispute (Docket No. 120) ¶¶ 11, 21, 25, 26, 36, 37, 38, 39, 40, 41, 42, 43, 45, 76, 77, 79, 80, 81, 82, 83, 85, 86, 87, 90, 92, 134, 139, 140.
[19] Plaintiffs' Appendix (Docket No. 122) pp.63, 217, 274.

          Respectfully submitted,

          Evashavik Law, LLC

          */s/ Gregory A. Evashavik*
          Gregory A. Evashavik, Esq.

          */s/ Nicholas J. Evashavik*
          Nicholas J. Evashavik, Esq.
          (*Attorneys for Defendants*)

## **CERTIFICATE OF SERVICE**

We hereby certify that a true and correct copy of the within *Defendants' Reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Summary Judgment Motion* has been served upon the following parties via electronic service:

Noah Geary, Esquire
*(Counsel for Plaintiffs)*

*/s/ Gregory A. Evashavik*
Gregory A. Evashavik, Esq.

*/s/ Nicholas J. Evashavik*
Nicholas J. Evashavik, Esq