# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CALISIA KELLEY and JOHNNIE MAE
KELLEY, Co-Administrators of the
ESTATE OF BRUCE KELLEY JR.,
deceased,

    Plaintiffs,

         Vs.

BRIAN O'MALLEY, both
in his Official and Individual Capacities
as Sergeant for the Allegheny County Port
Authority and DOMINIC RIVOTTI, in both his
Official and Individual Capacities as Officer for
the Allegheny County Port Authority,

   Defendants, Jointly and Severally.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:17-cv-1599 NBF

TYPE OF PLEADING:

PLAINTIFFS' SUR-REPLY
TO DEFENDANTS' REPLY
TO PLAINTIFFS' RESPONSE
TO SUMMARY JUGDMENT
MOTION.

NATURE OF COMPLAINT:
Section 1983 Civil Rights Action
Excessive/Deadly Force

FILED ON BEHALF OF:
Calisia Kelley and Johnnie Mae
Kelley, Co-Administrators of
the Estate of Bruce Kelley, Jr.,
deceased.

BY:
Noah Geary, Esquire
Suite 225
Washington Trust Building
Washington, PA 15301
724-222-3788
PA ID 78382

July 13, 2021

## Introduction.

The Plaintiffs wish to clarify a reference(s) to Defendant Ravotti as a K-9 Officer in their initial Response to the Defendants' Motion. That was a mistake. Defendant O'Malley was the K-9 Officer. Ravotti was not a K-9 Officer.

The Defendants' Reply does not, in any way, negate the fact that, inter alia, the following genuine disputes of material fact exist in this matter requiring the denial of their Motion:

1.      Whether Kelley assaulted any Officer at the Gazebo or committed any Felony. Officer Adams's call made no mention whatsoever of any assault. Nor any Felony. It was merely " a group of individuals were resisting" and one "had" a knife. Plaintiffs' RCSUMF #s 16-20.

2.      Whether the prior uses of force were "to no effect": in fact, they were ineffective only because the Officers – 20 in number -could not competently spray Kelley with Pepper Spray in his eyes. Plaintiffs' RCSUMF #s 25-26, Plaintiff's Additional CSUMF #19-21. The Defendants' claim that this is "irrelevant". To the contrary, it is material because it directly disputes their position that deadly force was justified because the lesser uses of force were "to no effect".

The same is true for whether the Defendants exhausted all other means of non-deadly force. They did not. Plaintiffs' RCSUMF #s 93.

3.      Whether Kelley, during the 20 minutes prior to the Defendants shooting him to death, was a threat to any police Officer. Plaintiffs' RCSUMF #s 16-20, 39-43 and 92. In fact, all Kelley did was (i) continue to walk away from the officers and (ii) not put the utility knife down.

4.     Whether Kelley was a threat to any civilians. Similar to the above, during the 20 minutes prior to the Defendants shooting him to death, Kelley was no threat to any civilian. RCSUMF #59; *also, deposition transcript of Officer Sanders, page 43, lines 18-25; deposition transcript of Officer Granger, page 43, lines 11-18).*

5.     The Defendants argue that the Plaintiffs did not cite to a 4th Amendment case supporting their position that the mental state of the Defendants preclude the grant of Summary Judgment. That is not true. The Plaintiffs cited the seminal 4th Amendment case of Graham vs. Connor, 490 U.S. 386 (1989). At Footnote 12 of Graham, the Supreme Court of the United States ruled:

> **"Of course,** in assessing the credibility
> of an officer's account of the circumstances
> that prompted the use of force, a fact-finder
> **may consider**, **along with other factors, evidence
> that the office may have harbored ill-will
> towards the citizen…**(*Cite omitted*). **Similarly,**
> the officer's objective "good faith" – that is,
> whether he could reasonably have believed
> that the force used did not violate the Fourth
> Amendment – may be relevant to the
> availability of the qualified immunity
> defense to monetary liability under Section
> 1983. (*Cite omitted).*" **(Emphasis added).**

The fair inference from the facts is that O'Malley and Ravotti killed Bruce Kelley, Jr. out of anger and in retaliation for wounding O'Malley's K-9 "partner". Thus, the ill-will harbored by O'Malley and Ravotti towards Kelley for allegedly stabbing their dog (the photos from the OME show no such injuries, however) is most certainly for a jury to consider upon observing the demeanor of the Defendants on the witness stand at trial. The Plaintiffs therefore made no erroneous legal arguments in their Response. Relatedly, the Schoonejongen case cited by the

Defendants actually supports the Plaintiffs' position that necessary credibility determinations are intertwined here with disputes of material fact which alone warrants the denial of their Motion. Schoonejongen states:

> "[C]ertain scenarios may arise where a material fact cannot be resolved without weighing the credibility of a particular witness or individual – **such as when the defendant's liability turns on an individual's state of mind and the plaintiff has presented circumstantial evidence probative of intent."** Id., at 130. **(Emphasis added).**

Here, if the Defendants shot and killed Kelley in retaliation for harming their dog, that is unlawful force. The Plaintiff's RCSUMF attached thereto the initial interviews of both Defendants with the ACPD and neither Defendant mentioned Kelley taking any steps towards them. The jury is free to accept this version as true and reject the later versions wherein the Defendants made up that Kelley took steps towards O'Malley.

6. Whether or not Kelley in fact took any steps towards O'Malley or Ravotti; Plaintiffs' RCSUMF #50;

7. Whether Kelley's alleged stabbing of the dog was defensive in nature, not a gratuitous, violent act; Plaintiffs' RCSUMF #46, 48-49;

8. Whether deployment of the K-9 was an unreasonable use of force Plaintiffs' RCSUMF #140-151, 46-47;

Significantly here, the two pivotal uses of force, the deployment of the dog and the shooting and killing of Kelley, are intertwined. Giving the Plaintiffs the benefit of all facts and reasonable inferences, Kelley was shot and killed because O'Malley's deployment of the dog was bungled/failed. Both uses of force were unreasonable.

9.      Whether Kelley's refusal to put down the knife and stop walking was due to wilfulness on his part – or mental illness. Plaintiffs' RCSUMF #37, 38, 60, also, Additional Facts offered by the Plaintiffs, #2-8.

        The Defendants argue that ALL of the Plaintiff's Additional Undisputed Material Facts are "irrelevant". To the contrary, they are material to Kelley's mental illness, which should have caused the Defendants, per their own Crisis Intervention Training, to handle the situation entirely differently and to engage in dialogue with Kelley rather than escalating the situation. They are material in refuting the false claim that the prior uses of force were "to no effect". They are also material to the Defendants refusal to state the obvious, i.e., where they both were and where Kelley was at the 2 critical junctures.

10.     Whether the Defendants' refusal to answer questions and mark their OWN Exhibit as to where they were and where Kelley was at the 2 critical junctures: (i) when the dog was deployed and (ii) when the Defendants started shooting at Kelley should cause this Court to reject the Defendants' Motion - out of hand. The Defendants never testified where they were nor where Kelley was at these two dispositive points. Ravotti, in a round about way, testified to where Kelley was and where O'Malley was when O'Malley started shooting Kelley, and the distance is 58 feet. Not 8 feet. This is a genuine dispute of not only a material fact, but a critical, dispositive

fact. The Defendants should not be able to get away with refusing to answer such basic questions. Since they don't know where they were or where Kelley was at these 2 critical points in time, how can this Court grant their Motion that their use of force, as a matter of law, was *reasonable?*

<u>Both Defendants violated a clearly-established constitutional right: that is, to be free from being shot to death when you do not pose a significant and immediate threat of death of serious bodily injury to the officers or anyone else.</u>

Both Defendants violated a clearly-established constitutional right: that is, the right to be free from being shot to death when you do not pose a significant and immediate threat of death of serious bodily injury to the officers or any civilian.

Notably, however, there are so many disputes of material fact here that this Court must refrain from making any finding on the issue of qualified immunity. That issue should be reserved for the jury at trial.

<u>Additional documents.</u>

The Plaintiffs' received some documents just last week for the first time from the Office of the Medical Examiner which were provided to defense counsel upon receipt. Four are attached in a Supplemental Appendix filed contemporaneously with this Sur-Reply.

They are as follows:

**EXHIBIT 25**     **3 photographs from the Office of the Allegheny County Medical Examiner of the K-9 with no injuries to the throat or neck**

**EXHIBIT 26**     **Conclusion of Allegheny County Homicide Detective Caruso: "The actor stabbed the canine prompting officers to open fire on the actor".**

**EXHIBIT 27**     **OME Mobile Crime Unit Fact Sheet: "The victim stabbed the Police dog. Officers subsequently opened fire on the victim."**

**EXHIBIT 28**     **Allegheny County Medical Examiner Death Investigation Case Report: Past Medical History: "possible psych issues" (page 2)**

Each Exhibit corroborates that genuine disputes of material fact exist in this case. Exhibit 25, photos of the K-9 from the Office of the Medical Examiner, show no injuries to the neck, throat or face of the K-9. This directly contradicts the Defendants' contention that Kelley, Jr. "violently stabbed the K-9 in the throat/neck".

Exhibit 26 contains the factual finding of Allegheny County Homicide Detective Caruso:

> "The actor stabbed the canine prompting
> officers to open fire on the actor".

This corroborates the Defendants' Initial Interviews with the ACPD where there is **NO MENTION** of Kelley, Jr. taking **ANY** steps toward O'Malley or any other Officer. This directly contradicts the Defendants' subsequent deposition testimony that Kelley took steps towards O'Malley.

Identically, there is no mention whatsoever in the Findings of the OME's Mobile Crime Unit, Exhibit 27, that Kelley took any steps toward O'Malley or any other Officer before he was shot:

> "The victim stabbed the Police dog. Officers
> subsequently opened fire on the victim."

Finally, all Officers except O'Malley denied that Kelley, Jr. showed signs of mental illness. O'Malley did admit, importantly, that he heard Kelley say "Shoot me. Just fucking shoot me" - an obvious sign of mental illness/mental crisis/disturbance. O'Malley had "no reason" why he did not consider that to be a sign of mental distress. Yet,  **EXHIBIT 28,** the Allegheny County Medical Examiner Death Investigation Case Report reads: "Past Medical History:

possible psych issues" *(page 2)*. This information would have been obtained from the Officers at the scene by the Mobile Crime Unit Personnel. Thus, the Officers stated to the MCU personnel at the scene that Kelley, Jr. DID show signs of possible psychiatric/psychological issues, but conveniently denied this at their depositions.

**WHEREFORE,** for the plethora of reasons detailed above, the Defendants Motion should be **DENIED.**

Respectfully submitted,

/s/ Noah Geary
Noah Geary, Esquire
Washington Trust Building
Suite 225
Washington, PA 15301
(724) 222-3788
PA I.D.#: 78382

**CERTIFICATE OF SERVICE:**

I, Noah Geary, Esquire, do hereby certify that a true copy of the foregoing **SUR-REPLY**

was served via electronic mail on this day to the below-listed counsel of record:


Greg Evashavik, Esquire
*(Counsel for Port Authority Defendants)*


Respectfully submitted,

<u>/s/ Noah Geary</u>
Noah Geary, Esquire
Washington Trust Building
Suite 225
Washington, PA 15301
(724) 222-3788
PA I.D.#: 78382


July 13, 2021